| | |
|---|---|
| **Plaintiff**<br>Theodore S. Heintz<br>6674 Holly Lane<br>Anchorage, Alaska 99502<br>907-243-0114 | **RECEIVED**<br>JUN 2 3 2014<br>**CLERK, U.S. DISTRICT COURT**<br>**ANCHORAGE, A.K.** |

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ALASKA**

**JURY TRIAL DEMANDED**

**Plaintiff**
Theodore S. Heintz
6674 Holly Lane
Anchorage, Alaska 99502
907-243-0114
              **VS.**

**Defendants**
Steven Paul McDaniel
(address unknown, business address below)
210 Muldoon Road
Anchorage, Alaska 99504
907-333-9013 (home) 907-360-7582 (cell)
**AND**
Alaska Tactical and Security, Inc.
210 Muldoon Road
Anchorage, Alaska 99502
907-338-3458 (voice) 907-338-5434 (fax)
**AND**
Archie Lee Card
(address unknown, employers address below)
210 Muldoon Road
Anchorage, Alaska 99504
907-229-8805 (cell) 907-338-3458 (work)
**Defendants**

)  3:14-cv-00119-SLG
)  **COMPLAINT FOR...**
)
)  **A MULTITUDE OF WILLFUL**
)  **VIOLATIONS OF USERRA.**
)
)  **DISCRIMINATION AGAINST**
)  **A PROTECTED STATUS.**
)
)  **UNLAWFUL TERMINATION.**
)
)  **LOST WAGES & BENEFITS.**
)
)  **INTERFERENCE WITH**
)  **UNEMPLOYMENT BENEFITS.**
)
)  **INTERFERENCE IN OBTAINING**
)  **EMPLOYMENT.**
)
)  **SLANDER & LIBEL.**
)
)  **PAIN & SUFFERING.**
)
)  Case No._____

## FILING FEE'S & COURT COST's

    1.    Title 38 U.S.C. § 4323(h)

(h) Fees, court costs- (1) No fees or court costs may be charged or taxed against any person claiming rights under this chapter.

1

Case 3:14-cv-00119-SLG   Document 1   Filed 06/23/14   Page 1 of 14

(2) In any action or proceeding to enforce a provision of this chapter by a person under subsection (a)(2) who obtained private counsel for such action or proceeding, the court may award any such person who prevails in such action or proceeding reasonable attorney fees, expert witness fees, & other litigation expenses.

I respectfully & humbly request the assistance of the U.S. Marshal's regarding process services.

## STATUTE OF LIMITATIONS

2. Title 38 U.S.C. § 4327(b)

(b) Inapplicability of statutes of limitations — If any person seeks to file a complaint or claim with the Secretary, the Merit Systems Protection Board, or a Federal or State court under this chapter alleging a violation of this chapter, there shall be no limit on the period for filing the complaint or claim.

## JURISDICTION

3. This Court has subject matter jurisdiction pursuant to Title 38 U.S.C. § 4301-4335. The Court has pendent jurisdiction & supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S. C. § 1367.

## VENUE

4. The matter at issue occurred, in all parts & regards, solely in Alaska. However, the primary law most egregiously violated by both defendants is a Federal law & is the umbrella under which the Court has pendent & supplemental jurisdiction regarding the State law issues. Venue therefore lies in the United States District Court for the District of Alaska.

## PARTIES

5.  Plaintiff Theodore S. Heintz is a resident of Alaska & has no other residency.

6.  Defendant Steven Paul McDaniel, doing business as Alaska Tactical and Security, Inc. is a resident of Alaska & has no other known residency.

Defendant Alaska Tactical and Security, Inc. is an Alaskan registered corporation & is vicariously liable for the actions of its owner.

7.  Defendant Archie Lee Card is an Australian citizen & a U.S. citizen.

## STATEMENT OF FACTS

8.  In April 2007 defendant Steven Paul McDaniel invited me to dinner where he successfully wooed me with a job offer based on my expertise in small arms, related equipment, laws & policies. Defendant Steven Paul McDaniel offered me a compensation package which included but was not limited to a starting wage of around $11.50 per hour (which later grew to $15 per hour plus sales commission long before I joined the Guard), plus sick leave, comp time, & 2 weeks paid vacation. I asked him about opportunities for growth & questioned working for him as an arms consultant versus pursuing a more traditional career. He countered with "Well, I hope that you'll make Alaska Tactical your career."

9.  I put my heart & soul into it & became very very good at my job. I quickly earned performance based raises, sales commissions, health benefits, & more. I also became a nationally certified handgun instructor. My performance was so outstanding that in addition to numerous performance bonuses, benefits increases, & other incentives, I was gifted an approx. $1700-$2000 custom pistol with the company name engraved on it, to which defendant Steven Paul McDaniel has a matched mate. However, most tellingly, due to my extreme intrinsic &

3

fundamental value to the company & my contribution to its success & growth (so much so that it quickly became necessary to move to a much larger location) defendant Steven Paul McDaniel asked my permission (legally required) to obtain a $600,000 (there were times when I alone personally grossed that much in sales), key man executive life insurance policy on me. That's the maximum possible amount under that policy with that carrier.

10. In order to induce & incentivize me to consent to this, I was promised that if I stayed with the company for a total of 10 years, I would be given $150,000 to do as I wish, including starting my own competing business. Additionally, I was promised that in the event of my death that $150,000 would be given to my mother. Defendant Steven Paul McDaniel first opened the policy with New York Life, then opened an identical policy with Northwestern Mutual & canceled the first, so it was not a mistake or done casually. At this point I had never had any disciplinary letters & I was a golden goose.

11. I've always been drawn to public service & felt that I wanted to do more with my life. I began to contemplate serving my country while expanding my horizons by joining the military. On Monday, May 23rd, 2011 at around 4PM I went to their office & spoke to Alaska Army National Guard recruiters. The recruiter asked if I had a bachelor's degree. I told them I did. They asked if I would be interested in becoming an Officer. I said I would. They said good, we only hold Officer Candidate selection boards once or twice a year & there is one tomorrow morning, be there at 0700. I went straight home & immediately called defendant Steven Paul McDaniel & asked to use a personal day for May 24th for personal reasons. He became very angry & demanded to know why. I told him I needed May 24th off in order to attend a fitness for duty screening as an Officer Candidate with the Army National Guard.

4

12. On Tuesday, May 24th, 2011 I successfully interviewed with a panel of Officers & passed selection for Officer Candidate School. It was a multi-hour grueling process, but one in which I met the challenge, displayed outstanding character & potential, & passed with flying colors. Unfortunately, before I left for training, they changed the age limits for Officers & I therefore became ineligible. However, due to my strong idealism, my resolve to serve & give back to my community, state, & nation was undeterred & I took a standard enlistment.

13. When I returned to work I was immediately verbally attacked & berated by defendant Steven Paul McDaniel. He said that by joining the Guard, going for training, & incurring monthly weekend drill obligations, I was being disloyal to him & the company, betraying him & backstabbing him. What would he do without me, who would take care of things while I was gone? Who would take care of things while he was gone? Who would work weekends when I had to drill? Despite his irrational hostility I maintained my professionalism (something I am well regarded for in the Guard) & made sure to keep him in the loop & give him my training dates immediately when I got them. Unfortunately, the situation continued to rapidly & severely deteriorate.

14. At that time defendant Archie Lee Card, was a part time employee & filling in for me during my off day. Although not required to I went above the call of duty by suggesting that since Archie was already an employee we could train him to help fill in while I was away at Basic/AIT & I offered to personally train him myself & pass on my extensive knowledge. I helped him expand his role & taught him a great deal. During this time defendant Steven Paul McDaniel & defendant Archie Lee Card bonded by frequently harassing me including telling me that I wasn't soldier material let alone officer material & that I was doomed to failure anyway, so

5

why was I wasting their time with this silly fantasy. Defendant Archie Lee Card even sneered at me as he made the comment "Don't worry, it's not like I'm gonna steal your job or anything!"

15. On August 29th, 2011 I left for Basic/AIT.

16. In February 2012, I came home from Basic/AIT where I graduated with honors & won an Army Achievement Medal. Later, defendant Steven Paul McDaniel would complain in a disciplinary letter, in which he falsified the dates & other information, that I took 4 days to report in to Alaska Tactical. His fabrications neglected to mention that I came in on a late flight after traveling almost 2 days, or that those 4 days included a weekend & my regular off days.

17. By mutual agreement with defendant Steven Paul McDaniel & in order to allow time for adjustment regarding defendant Archie Lee Card's schedule (although I am not required to, I really bent over backwards to be helpful), I took an opportunity afforded me by my already established outstanding record & performance & attended WLC (Warrior Leaders Course). WLC is normally reserved for soldiers who have been in a couple years. Here I was, invited to go right out of the gate. I was very honored & excited. The final field exercises of WLC involve leading small unit combat teams. Unfortunately, I missed a passing grade on this portion by the skin of my teeth, about 1.04 points. My overall score was still 81%, even with failing the last field exercise, but as with many things in the Army, it was all or nothing. When the bogus disciplinary letters started rolling in, amongst them was an official disciplinary letter, on official Alaska Tactical letterhead (with falsified dates & information) chastising & disciplining me for wasting their time by being a failure at WLC. I am still unable to understand how my performance in a military small unit combat exercise meant to challenge & develop small unit combat leaders has anything to do with my civilian job.

6

18. After WLC I immediately reported back to work ready to hit the ground running & resume my previous position & status as specifically provided for by USERRA. Instead, as I walked through the door I was immediately taken to the back & told that I no longer worked there & that my position had been given to defendant Archie Lee Card. I was told that I would be hired as a new guy in a new position completely separate from my previous position & having less pay & no seniority. I objected & stated that that wasn't right. I was told that I could take it or leave it & that if I wanted to quit my new position & leave, well, that was fine by him.

19. I then went to my desk in the office & placed my things at my desk. Defendant Archie Lee Card then violently swept all of my things off the desk scattering them across the office floor & told me that the desk went with the position & that they were both his now but they might let me make space for myself over in the corner where I belonged. Defendant Steven Paul McDaniel walked in while this was going on & they both had a great laugh over it while they continued to berate me. Further harassment & abuse was daily & constant. It became obvious that they were trying to force me to quit via constructive termination. They kept piling more & more bad news on me, one day it was, oh you don't have any vacation or sick leave anymore & whatever you had doesn't count anymore, another day it was oh you don't get commission anymore & so forth & so forth. When I asked why I don't get commission anymore, I was told that it was because I was considered a part time employee now & only full time employees can get commission. I objected noting that I was working full time hours. I was told it didn't matter how many hours I was working, that I was considered to be a part time employee in a part time position & I should just be glad for the extra hours.

20. I contacted the ESGR (Employer Support of the Guard & Reserve) Ombudsman's office & told them that I was being harassed & abused so bad that I wanted to quit but I was told

7

not to quit because it might negatively affect my legal rights. So, I stayed, in Hell, during which time I tried all reasonable discussion with defendant Steven Paul McDaniel to resolve the matter, without success. I asked the ESGR Ombudsman for help. Unfortunately, the first time he came by I was out, however he told me that defendant Steven Paul McDaniel had told him that since he (defendant) was a small independent business owner the law didn't apply to him & he would do whatever he wanted, his business, his rules. The ESGR Ombudsman told me he was shocked by defendant Steven Paul McDaniel's hostility. It seemed as if he had practically been chased off. After the ESGR Ombudsman's visit, the abuse & harassment spiked & defendant Steven Paul McDaniel actually told me to "Take the law & shove it up your fucking ass!" None the less, still desperately hoping for some sort of civil, peaceful, & positive resolution, I arranged for the ESGR Ombudsman to come back another time so that he could speak with both defendant Steven Paul McDaniel & myself. Unfortunately, that didn't go any better or improve defendant Steven Paul McDaniel's hostility & scofflaw arrogance.

21. The ESGR Ombudsman told me that because defendant Steven Paul McDaniel was so hostile & irrational, it may become necessary to file an official complaint. I told him that I was trying very hard to avoid it but would if I had to. He wished me good luck. Then the secret bogus disciplinary letters, almost one a week, started. Perhaps due to a guilty conscience, defendant Steven Paul McDaniel could not even bring himself to sign them. This alone should cast doubt on their validity. I was not told of them & found out about them by accident. Additionally, other employees were told that they were forbidden from associating with me.

22. On June 23rd I was unlawfully terminated. I was told that I would be given 2 weeks' severance pay on the next regular payday. I came back on the appointed day & was told I would only be given one, & only because he had already written it & processed it because he

8

was pissed off at me being a rat for having brought the situation to my Sergeant's attention (Guardsmen & Reservist are required to keep their chain of command informed of employment status) for advice.

23. I became engulfed in despair & melancholy to the point of being unable to function. I nearly lost my relationship, I couldn't sleep, I couldn't perform sexually. I was deeply wounded & gravely affected by the injustice & irrationality of it. To be actively & maliciously harassed & abused for my desire to serve my country, even just one weekend a month & 2 weeks a year, was so very bizarre, irrational, & unimaginable. The despair, pain, & suffering were paralyzing. The damage to my relationship was horrific. I have never experienced anything like that before & hope I never will again.

24. Meanwhile a U.S. Dept. of Labor investigation was being conducted. The official U.S. Dept. of Labor investigation results vindicated me finding that my case did indeed have merit & my improper reemployment followed by my unlawful termination was indeed related to my National Guard service. This is a matter of official record.

25. Eventually I applied for unemployment & was initially denied &/or had my benefits restricted. I appealed & after investigation discovered that this was due to slander & libel on the part of defendant Steven Paul McDaniel who had claimed that I was fired due to alleged gross misconduct on my part. Defendant Steven Paul McDaniel had previously threatened me in regards to the USERRA case & also told me that he wasn't going to pay for unemployment but I had no idea how that was even possible & didn't take him seriously at the time, my mistake. Still, though, I could not have imagined how bad the slander & libel would be. Eventually after another series of appeals I was vindicated when defendant Steven Paul

9

McDaniel was essentially caught lying as I was able to show them the U.S. Dept. of Labor investigation results showing that my claims & case had merit.

26. Unfortunately, in the meantime, I was not only unable to obtain employment but also unable to receive proper unemployment benefits while the situation & appeals dragged on. This led to financial crisis which caused me to liquidate much of my assets, & frequently at a moderate to severe loss. But, you gotta eat, right?

27. After I was able to partially crawl out of the deep & crippling despair sufficiently to become functional again, I began to proactively search for work. A strange pattern emerged in which I would do well initially & then at the stage where they verified my employment history, things would fall apart. This went on for a long time. Finally I was able to get confirmation that defendant Steven Paul McDaniel was slandering me to potential employers & telling them that I shouldn't be hired because of what a horrible person & employee I was & how I was a mental case & ran his business into the ground.

28. Before I joined the guard I was the best thing since sliced bread, key executive life insurance, solid performance, bonuses & gifts, benefits, etc. After I joined the guard I was the worst piece of crap that ever lived. Before I joined the Guard, not one disciplinary letter. After I joined the Guard, almost 1 a week, & only after I made a complaint about the abuse & harassment I was receiving in connection with my service & the other multitude of willful USERRA violations. My character & reputation have been assassinated, my relationships damaged, my finances devastated & assets liquidated, my ability to draw unemployment or obtain employment undermined & so forth. All of which brings us to this point today.

10

Case 3:14-cv-00119-SLG   Document 1   Filed 06/23/14   Page 10 of 14

## COUNT I

## (A MULTITUDE OF WILLFUL VIOLATIONS OF USERRA)

29. Plaintiff repeats & realleges paragraph 1 through 28 above as though fully set forth in this claim. Each & every time that defendant Steven Paul McDaniel maliciously informed me of yet another way that he was willfully violating me, starting from the very moment I walked in the door to report back to work, leading through the purposely & maliciously timed & planned announcement of yet another reduction, withdrawal, or elimination of my former position, wages, commission, or other benefits constituted an ongoing pattern of separate, deliberate, malicious, & willful violations of USERRA. The bogus disciplinary letters I conveniently received all in an about a one month period only after objecting to his abuse & requesting USERRA assistance are clear retaliation for having bought his unlawful activities to light. His disciplinary letter for wasting his time at Warrior Leaders Course shows his utter contempt. His slander & libel resulting in my denial &/or reduction of unemployment benefits & my ability to obtain employment are also current & ongoing retaliation that only furthers & deepens the malicious & willful nature of his multitude of violations. These actions are also violations of state law as well. All of the above brought great loss, material, financial & otherwise, & accompanying pain & suffering

## COUNT II

## (HARASSMENT, ABUSE, & DISCRIMINATION AGAINST A PROTECTED STATUS)

30. Plaintiff repeats & realleges paragraph 1 through 29 above as though fully set forth in this claim. See previous paragraph. In addition to that covered in count I, Defendant Archie Lee Card's role in this must not go unnoticed or unaddressed. Not only did he engage in harassment

& abuse of his own volition (such as the desk dumping incident previously described) but he also encouraged & egged on defendant Steven Paul McDaniel which greatly contributed to the severity & constancy of the harassment & abuse. Again, this is illegal not only under USERRA but also under state law both general employment law & state laws protecting Guard members & service members.

## COUNT III

### (UNLAWFUL TERMINATION)

31. Plaintiff repeats & realleges paragraph 1 through 30 above as though fully set forth in this claim. Not only is what happened unlawful under both USERRA & state law but furthermore it happened during USERRA's discharge protection period. Under Title 38 U.S.C section 4316 (c)2 a reemployed service member may not be discharged without cause for 180 days after the date of reemployment if the person's period of military service was for 31 to 180 days. I was in training for 163 days. Again this caused severe damage & loss to me.

## COUNT IV

### (LOST WAGES & BENEFITS)

32. Plaintiff repeats & realleges paragraph 1 through 31 above as though fully set forth in this claim. The reduction in pay & the stripping away of my commission & benefits was an unlawful attack on me that hurt me severely. The continued & ongoing slander & libel which have been maliciously preventing me from obtaining employment also means that my lost wages & benefits have continued to accumulate. In fact, I have had no full time or permanent employment since. I have been surviving on a series of temporary activations for special projects or special duty for the Guard. During which service, I have graduated ATI with honors, won an Army Achievement Medal, was granted the honor of attending WLC years ahead of normal, graduated Battalion

Career Counselors Course at the top of my class, participated in support operations for Best Warrior competition 2011, & won a Certificate of Achievement for saving a fellow soldier's life in a medical emergency.

## COUNT V

### (INTERFERENCE WITH UNEMPLOYMENT BENEFTIS)

33. Plaintiff repeats & realleges paragraph 1 through 32 above as though fully set forth in this claim. Defendant Steven Paul McDaniel's interference with my drawing unemployment benefits forced me to liquidate assets at loss so I could continue my existence. Defendant Steven Paul McDaniel's deliberate, malicious, & willful actions made certain that it has been a miserable existence.

## COUNT VI

### (INTERFERENCE IN OBTAINING EMPLOYMENT)

34. Plaintiff repeats & realleges paragraph 1 through 33 above as though fully set forth in this claim. In addition to the previous paragraph, defendant Steven Paul McDaniel's slander & libel about me to potential employers is an unlawful & unacceptable form of ongoing retaliation that continues even now to create great financial loss for me.

## COUNT VII

### (SLANDER & LIBEL)

35. Plaintiff repeats & realleges paragraph 1 through 34 above as though fully set forth in this claim. USERRA or not, this type of malicious character assassination is not only unlawful but immoral. Furthermore, one's reputation & honor is one of the most important possessions one can ever have & its value cannot be quantified. Malicious false attacks on another's character are

one of the most egregious forms of injury there is. He also made allegations against me of unspecified dishonesty.

## COUNT VIII

### (PAIN & SUFFERING)

36.     Plaintiff repeats & realleges paragraph 1 through 35 above as though fully set forth in this claim. Not only have I suffered horrifically debilitating despair as previously described, but even now I suffer from regular bouts of it. I'm highly functional now days most of time. However, this issue & its ongoing fall out haunts me still.  Please do not underestimate the importance of this & how it even now causes strain on my relationship & my daily life. This should not be happening to someone who simply wanted to expand their horizons & give back to their community through service in the Guard.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays as follows:

1.      For a judgment against defendant Steven Paul McDaniel, doing business as Alaska Tactical and Security, Inc. in the principal amount of $600,000.00;

2.      For a judgment against defendant, Archie Lee Card, in the principal amount of $150,000.00;

3.      For an injunction against interference with my drawing unemployment benefits, interference in obtaining employment, & further slander & libel;

4.      For all costs & possible future attorney's fees incurred herein;

5.      For such other & further relief as the Court may deem just & proper.

Dated: 06-19-2014                                                                                    Theodore S. Heintz